1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TONY WAMPLER,                                          )
                                                       )
                    Plaintiff,                         )
                                                       )
           v.                                          )            3:11-cv-546-RCJ-VPC
                                                       )
                                                       )            **ORDER**
CARSON CITY SHERIFF, *et al.*,                         )
                                                       )
                    Defendants.                        )
                                                       )
_____)

        This case involves alleged violations of the U.S. Constitution and a Nevada statute resulting from the publication of Plaintiff's social security number ("SSN") by a detective at Carson City Sheriff.  Currently pending before the Court are two motions for summary judgment.  The first motion for summary judgment (#12) was filed by Defendants Carson City Sheriff and Detective Bob Motamenpour.  The second is a motion for partial summary judgment (#18) filed by Plaintiff.  For the following reasons, the Court grants Defendants' motion for summary judgment (#12) and denies Plaintiff's motion for partial summary judgment (#18).

**BACKGROUND**

        Under NRS § 646.060(8) it is illegal for pawnbrokers to receive property from "a person under the age of 18 years, common drunkard, habitual user of controlled substances, habitual criminal, habitual felon, habitually fraudulent felon, person in an intoxicated condition, known thief or receiver of stolen property, or known associate of a thief or receiver of stolen property."

1    The apparent purpose of NRS § 646.060(8) is to prevent the resale of stolen goods.[1]

2         In order to aid Carson City pawnbrokers in complying with NRS § 646.060(8), in

3    September 2010 Detective Bob Motamenpour created a list (the "Exclusion List") containing

4    the names and SSNs of approximately 683 individuals he believed were prohibited by the

5    statute from doing business with pawnbrokers.  (Motamenpour Dep. (#14-1) at 42-44, 66-67,

6    86).  Motamenpour distributed the Exclusion List to seven or eight Carson City pawnbrokers

7    and secondhand dealers along with a letter stating that if a pawnbroker was found to do

8    business with any individual on the list, the pawn shop could be subject to a misdemeanor

9    citation.  (*Id.* at 73).  SSNs were chosen as the method of identification because if a person

10   pawns anything at a pawnshop, they are required to provide their SSN.  (*Id.* at 85-86).  A few

11   weeks after the Exclusion List was distributed, a corrected list was issued which omitted SSNs

12   and replaced them with the individual's date of birth.  (*Id.* at 89-90).  The SSNs were removed

13   because Motamenpour was concerned about potential identify theft.  (*Id.* at 92).  At the time

14   the corrected list was disseminated, Motamenpour collected the original Exclusion List, but

15   took no steps to ensure it had not been copied.  (*Id.* at 97).

16        Plaintiff Tony Wampler's name and SSN were included in the Exclusion List.  (Wampler

17   Dep. (#14-9) at 25).  Wampler was convicted of property-related crimes in the 1980's, but he

18   has since reformed his life and has been a law-abiding citizen for well over fourteen years.

19   (*Id.* at 23).  He was never notified by Carson City Sheriff that his name and SSN had been

20   given to pawnbrokers in the area and only found out from a friend, Michael Picard.  (*Id.* at 25).

21   Picard obtained the list from an anonymous friend that works at a local Carson City pawnshop.

22   (Picard Aff. (#14-10)).  After discovering his name on the list, Wampler called Motamenpour

23   to ask why his name was on the Exclusion List, to which Motamenpour replied that he was on

24   the Exclusion List because he was a habitual criminal.  (Wampler Dep. (#14-9) at 27).

25        Wampler filed a complaint in this Court against Carson City Sheriff and Motamenpour

26

27        [1]  *See In re Schwalb*, 347 B.R. 726, 737 (Bankr. D. Nev. 2006) ("[T]he main purpose

28   of Chapter 646 is not consumer protection, but law enforcement.").

2

(collectively "Defendants") on July 29, 2011.[2]  (Compl. (#1)).  The complaint contains three causes of action.   The first cause of action alleges Defendants violated Wampler's constitutional right to informational privacy by publishing his SSN.  (*Id.* at 3-5).  The second cause of action asserts that the Exclusion List violated NRS § 239B.030, which requires governmental agencies to remove personal information from documents if that information is not required by state or federal law, for the administration of a public program, or for an application for a federal or state grant.  (*Id.* at 5-6); *see also* NEV. REV. STAT. § 239B.030(5). The third cause of action claims Defendants violated 42 U.S.C. § 1983 by infringing upon Wampler's constitutional right to informational privacy.  (Compl. (#1) at 6-7).

Defendants filed a motion for summary judgment on February 21, 2012.  (Mot. for Summ. J. (#12)).  The motion for summary judgment argues that the distribution of the Exclusion List to local pawnbrokers did not violate any constitutional right to informational privacy, and even if it did, summary judgment is still appropriate because Motamenpour is entitled to immunity from suit and Carson City Sheriff is not a proper party to this suit.  (*Id.* at 6-21).

Wampler filed a motion for partial summary judgment on May 1, 2012.  (Mot. for Summ. J. (#18)).  In the motion, Wampler seeks summary judgment on his first and third causes of action for violation of his right to informational privacy.  (*Id.* at 22-23).  Wampler further asserts that Motamenpour is not entitled to qualified immunity and that Carson City Sheriff should be held liable because its policies and procedures were inadequate to prevent the violations of Wampler's constitutional rights.  (*Id.* at 19-22).

Oral argument was held on the motions on June 25, 2012.

## LEGAL STANDARD

The purpose of summary judgment is to dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A court must grant

---

[2] The municipality of Carson City itself was not named as a defendant.  (Compl. (#1) at 1).

1    summary judgment when "the movant shows that there is no genuine dispute as to any
2    material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).
3    A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477
4    U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence
5    for a reasonable jury to return a verdict for the nonmoving party. *Id.*

6         When presented with a motion for summary judgment, the court employs a burden-
7    shifting analysis.  When the moving party would bear the burden of proof at trial, it must
8    present evidence "which would entitle it to a directed verdict if the evidence went
9    uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,
10   480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).  In such
11   circumstances, "the moving party has the initial burden of establishing the absence of a
12   genuine issue of fact on each issue material to its case." *Id.*  In contrast, when the nonmoving
13   party would bear the burden of proving the claim or defense, the moving party may satisfy its
14   burden in two ways: (1) by presenting evidence which negates an essential element of the
15   nonmoving party's case; or (2) by demonstrating that the nonmoving party has failed to make
16   a showing sufficient to establish an essential element to that party's case on which that party
17   would bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving
18   party fails to satisfy its initial burden, the court must deny the motion for summary judgment
19   and need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398
20   U.S. 144, 159-60 (1970).

21        If the moving party meets its initial burden, the burden will then shift to the opposing
22   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co.*
23   *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To show a genuine issue of material fact,
24   the opposing party is not required to establish a material issue of fact conclusively in its favor.
25   Rather, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to
26   resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*
27   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat. Bank of Ariz. v. Cities*
28   *Serv. Co.*, 391 U.S. 253, 288-89 (1968)).  In essence, the nonmoving party cannot avoid

4

1  summary judgment by solely relying on conclusory allegations that are unsupported by factual

2  data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The opposition must go beyond

3  the allegations and assertions of the pleadings and set forth specific fact by providing the court

4  with competent evidence that establishes a genuine issue for trial. Fᴇᴅ. R. Cɪᴠ. P. 56(e);

5  *Celotex Corp.*, 477 U.S. at 324.

6  At the summary judgment stage, the court is not to weigh the evidence and determine

7  the truth, but rather to determine whether there is a genuine issue for trial.  *See Anderson*, 477

8  U.S. at 249.  The evidence of the nonmovant must be believed, and all justifiable inferences

9  drawn in his favor.  *Id.* at 255.  If the evidence of the nonmoving party is simply colorable or

10  it is not significantly probative, summary judgment may be granted.  *See id.* at 249-50.

**DISCUSSION**

11

12  The facts of this case are not in dispute.  As no genuine issue of material fact exists in

13  this action, the only question to be resolved by this Court is whether Defendants are entitled

14  to judgment as a matter of law on Wampler's claims or whether Wampler is entitled to

15  judgment as a matter of law on his claims for violation of his right to informational privacy.

16  **I.    Wampler's Constitutional Violation Claims**

17  **A.    Defendants Did Not Violate Wampler's Constitutional Right To Informational Privacy**

18  Wampler alleges in his first and third causes of action that Defendants violated his

19  constitutional right to informational privacy in violation of 42 U.S.C. 1983.   "[Title] 42 U.S.C.

20  § 1983 provides a remedy to individuals whose constitutional rights have been violated by

21  persons acting under color of state law." *Burke v. Cnty. of Alameda*, 586 F.3d 725, 731 (9th

22  Cir. 2009) (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992)).   To

23  sustain an action under § 1983, a plaintiff must prove: (1) that the defendant acted under color

24  of state law; and (2) the conduct deprived the plaintiff of a right secured by the Constitution or

25  laws of the United States.  *See Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).

26  There is no dispute that Motamenpour acted under color of state law when he distributed the

27  Exclusion List on behalf of Carson City Sheriff.  Consequently, the Court need only determine

28

5

1    whether the distribution of the Exclusion List violated Wampler's rights secured by the

2    Constitution.

3           Whether a right to the nondisclosure of private information even exists remains an open

4    question under Supreme Court jurisprudence.  In *NASA v. Nelson*, - - - U.S. - - - -, 131 S.Ct.

5    746 (2011), the Court was confronted by the claims of government contractors that certain

6    aspects of a background investigation violated their constitutional right to informational privacy.

7    *Id.* at 751.  The Court noted that since the "waning days of [the] October Term 1976," it has

8    said "little else on the subject of an individual interest in avoiding disclosure of personal

9    matters."  *Id.* at 756 (internal quotation marks and citation omitted).  The Court then declined

10   to determine whether the United States Constitution guarantees a right to informational

11   privacy, and merely "assume[d], without deciding" that the right existed.  *Id.* at 751; *see also*

12   *id.* at 764-65 (Scalia, J., concurring) (criticizing the Court for not determining the status of the

13   right to informational privacy and stating his belief that no such right is guaranteed by the

14   Constitution).  However, prior to the Supreme Court's *Nelson* decision the Ninth Circuit held

15   that a person has a right to informational privacy, *see e.g., In re Crawford*, 194 F.3d 954, 958

16   (9th Cir. 1999), and as the Supreme Court did nothing to disturb this precedent, the Court

17   assumes that such a right still exists and will determine whether that right was violated in this

18   case.

19          Although the Ninth Circuit has previously recognized a right to informational privacy, it

20   has also held that the right "is not absolute; rather, it is a conditional right which may be

21   infringed upon a showing of proper governmental interest."  *Tucson Woman's Clinic v. Eden*,

22   379 F.3d 531, 551 (9th Cir. 2004) (quoting *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d

23   783, 790 (9th Cir. 2002).  A court must balance the following factors to determine whether the

24   government may properly disclose an individual's private information: (1) the type of

25   information at issue, (2) the potential harm resulting from any subsequent non-consensual

26   disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree

27   of need for access, and (5) whether there is an express statutory mandate, articulated public

28   policy, or other recognizable public interest weighing in favor of access.  *Id.*  This list is not

6

1   exhaustive and the relevant considerations will vary from case to case. *In re Crawford*, 194
2   F.3d at 959.

3   The question of whether the disclosure of an individual's SSN violates that individual's
4   right to informational privacy has previously been addressed by the Ninth Circuit. In *In re*
5   *Crawford*, the plaintiff, who characterized himself as an "independent paralegal," assisted
6   individuals in preparing bankruptcy petitions. 194 F.3d at 956. As a bankruptcy petition
7   preparer, he was required to comply with 11 U.S.C. § 110(c), which mandates that he provide
8   his SSN on documents for filing prepared by him. *Id.* The plaintiff sought leave of the
9   bankruptcy court to substitute an identification number other than his SSN on the bankruptcy
10  petitions he prepares, but this request was denied. *Id.* He did not wish to disclose his SSN
11  because as part of a bankruptcy case, it would become part of the public record and be
12  available for inspection, and he feared that this would place him at risk of identity theft. *Id.* at
13  959. Disregarding the bankruptcy court's order, the plaintiff proceeded to file bankruptcy
14  petitions without providing his SSN in violation of 11 U.S.C. § 110(c), and was fined a total of
15  $800 for his failure to comply with this statute. *Id.* at 956.

16  On appeal, the Ninth Circuit weighed the relevant factors, including the potential harm
17  to the plaintiff from the disclosure of his SSN against the government's interest in disclosure.
18  *In re Crawford*, 194 F.3d at 959. The Ninth Circuit noted that "the indiscriminate public
19  disclosure of SSNs, especially when accompanied by names and addresses, may implicate
20  the constitutional right to informational privacy." *Id.* at 958. Furthermore, "the harm that can
21  be inflicted from the disclosure of a SSN to an unscrupulous individual is alarming and
22  potentially financially ruinous." *Id.* (quoting *Greidinger v. Davis*, 988 F.2d 1344, 1354 (4th Cir.
23  1993)). However, the Ninth Circuit then indicated that the risk of identity theft from the
24  disclosure of a SSN must be discounted by the probability of its occurrence, holding that "the
25  realization of the injury still requires two additional, nongovernmental elements: (1) an identity
26  thief and (2) a vulnerable account." *Id.* at 959-60. The case of SSNs are thus different from
27  circumstances in which the individual is required to disclose personal facts such as HIV status,
28  sexual orientation, or genetic makeup because "a SSN is not inherently sensitive or intimate

7

1   information, and its disclosure does not lead directly to injury, embarrassment or stigma." *Id.*

2   at 960.

3        The Ninth Circuit then weighed the government's interest in disclosing the SSN and

4   found that these interests outweighed the risk of harm to the plaintiff. *In re Crawford*, 194 F.3d

5   at 960.  The provision requiring the disclosure of the bankruptcy petition preparer's SSN was

6   enacted to remedy widespread fraud and unauthorized practice of law in the industry.  *Id.*

7   Requiring the disclosure of the SSN also furthered the governmental policing of individual

8   preparers.  *Id.*  Although the government's interest related more to SSN collection rather than

9   to disclosure, the disclosure of the SSN served the important purpose behind the Bankruptcy

10  Codes' "public access" provision and was not impermissibly overbroad.  *Id.*  After weighing the

11  relevant considerations, the Ninth Circuit concluded that "the speculative possibility of identity

12  theft is not enough to trump the importance of the governmental interests" and accordingly the

13  disclosure did not violate the plaintiff's right to informational privacy.  *Id.*

14       As in *In re Crawford*, Wampler argues that the disclosure of his SSN placed him at risk

15  of identity theft and that no safeguards were put in place to prevent such theft.  (Mot. for

16  Summ. J. (#18) at 17-18).  Yet as illustrated in *In re Crawford*, these potential consequences

17  must be discounted by the probability of occurrence and the fact that a SSN is not inherently

18  sensitive or intimate information.  *In re Crawford*, 194 F.3d at 959-60.  The harm suffered by

19  Wampler is speculative at this point, as his identity has not been stolen nor has he suffered

20  any adverse effects from the disclosure other than a presumptive increased risk of identity

21  theft.   Because the disclosure of Wampler's SSN does not directly lead to injury,

22  embarrassment, or stigma, the potential harm must be decreased in the Court's weighing of

23  the relevant factors.

24       The governmental interest in disseminating the Exclusion List was to aid in the

25  enforcement of NRS § 646.060(8) and in preventing the fencing of stolen goods via

26  pawnshops.  *See* Nev. Rev. Stat. § 646.060(8); *In re Schwalb*, 347 B.R. at 737.  Regulation

27  of pawnshops is a substantial government interest because they provide a market for stolen

28  property.   *Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 853 (10th Cir. 1993).  The

government's interests in preventing the sale of stolen goods and the enforcement of NRS § 646.060(8) in this case are comparable to the interests of the government in *In re Crawford* of preventing fraud and the violation of the state's laws regarding the practice of law.  Although Wampler contends that there were means of identification other than SSNs that could have been used to identify individuals on the Exclusion List, such was also the case in *In re Crawford*, in which the Ninth Circuit upheld the disclosure of the plaintiff's SSN to identify him despite the fact that other forms of identification were requested and certainly possible.  *In re Crawford*, 194 F.3d at 956, 960.  SSNs simply are one of the best tools for identification because they are unique and difficult to change.  SSNs were also especially useful in enforcing NRS § 646.060(8) in this case because a person pawning property is required to provide their SSN as a means of identification. (Motamenpour Dep. (#14-1) at 85-86).  Finally, the distribution of the Exclusion List was limited to only 7 or 8 pawnshops and not to the public generally, making it less intrusive than if it was placed in the public record for all to see as was the case in *In re Crawford*.  (*Id.* at 68).  Weighing the relevant considerations, the Court concludes that the speculative possibility of identity theft is not enough to trump the important government interests in preventing the fencing of stolen goods and enforcing NRS § 646.060(8).

### B.    Motamenpour Is Entitled To Qualified Immunity

Even if the Exclusion List did violate Wampler's constitutional right to informational privacy, Motamenpour cannot be liable because he is entitled to qualified immunity. Government officials performing discretionary functions may be shielded from personal liability for their actions under the doctrine of qualified immunity.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability" and is an appropriate basis for granting summary judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  A right must be clearly established in a particularized sense, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The doctrine of qualified immunity protects

government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v Briggs*, 475 U.S. 335, 341 (1986). Government officials can have a reasonable, but mistaken, belief about the facts or about what the law requires in a certain situation. *Saucier*, 533 U.S. at 205; *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002).

Analyzing whether a government official is entitled to qualified immunity involves two questions: (1) whether the facts alleged, in the light most favorable to the plaintiff, show the official violated a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would know the conduct was unlawful. *Saucier*, 533 U.S. at 201. The court has discretion as to which prong will be addressed first under the particular circumstances presented, and if the answer to either is "no," then the official may not be held liable for damages. *Pearson*, 555 U.S. at 236.

As noted above, the facts of this case do not lead to the conclusion that the dissemination of the Exclusion List violated Wampler's right to informational privacy. Yet even if the distribution of the Exclusion List did violate Wampler's right to informational privacy, that right is not so clearly established that a reasonable government official would have known the action to be unlawful. As noted above and by other district courts, "Supreme Court and Ninth Circuit authority demonstrates that the constitutional right of informational privacy is murky, at best." *O'Phelan v. Loy*, 2011 WL 719053, at *11 (D. Haw. 2011). The scope of the right is unclear. Although the Ninth Circuit stated in *In re Crawford* that "the indiscriminate public disclosure of SSNs . . . may implicate the constitutional right to informational privacy," 194 F.3d at 958, the Ninth Circuit later suggested that the right may be limited to "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Seaton v. Mayberg*, 610 F.3d 530, 538 (9th Cir. 2010); *see also Huling v. City of Los Banos*, - - - F.Supp.2d - - - -, 2012 WL 1372810, at **10-11 (E.D. Cal. 2012) (discussing the discrepancies between *Seaton* and prior cases and concluding that "the right to informational

10

privacy is a narrow one"). Based on this confusing precedent, a reasonable officer could easily have concluded that the publication of Wampler's SSN did not violate his right to informational privacy.

Finally, and most importantly, the very existence of the right itself is not clearly established. The Supreme Court has not specifically held that such a right exists, but rather has only assumed its existence for the purposes of analyzing the cases before it. *Nelson*, 131 S.Ct. at 751. Two Supreme Court justices in *NASA v. Nelson* recently voiced their opinion that a constitutional right to informational privacy does not exist at all. *Id.* at 764 (Scalia, J., concurring) ("A federal constitutional right to 'informational privacy' does not exist."). Three jurists in the Ninth Circuit have also questioned the continued existence of a right to informational privacy. *Nelson v. NASA*, 568 F.3d 1028, 1052 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc) ("Is there a constitutional right to informational privacy? Thirty-two Terms ago, the Supreme Court hinted that there might be and has never said another word about it."). As the scope and existence of the right to informational privacy is not clearly established such that a reasonable officer in Motamenpour's position would have known that his actions violated the law, Motamenpour is entitled to qualified immunity. *See O'Phelan*, 2011 WL 719053, at *11 (holding that the defendant was entitled to qualified immunity because the right to informational privacy is not clearly established).

## II.    The Exclusion List Did Not Violate NRS § 239B.030

Wampler alleges in his second cause of action that Defendants violated NRS § 239B.030(5) by disseminating the Exclusion List. NRS § 239B.030(5) states in relevant part:

> On or before January 1, 2017, each governmental agency shall ensure that any personal information contained in a document that has been recorded, filed or otherwise submitted to the governmental agency before January 1, 2007, which the governmental agency continues to hold is . . . (b) Obliterated or otherwise removed from the document, by any method, including, without limitation, through the use of computer software, if the personal information is not required to be included in the document pursuant to a specific state or federal law, for the administration of a public program or for an application for a federal or state grant.

The statute however provides that governmental agencies are not required to comply with the provision until January 1, 2017. As the Exclusion List was issued before January 1,

1  2017, Defendants could not yet have violated this statute.  Defendants are accordingly entitled

2  to summary judgment on Wampler's claim for violation of NRS § 239B.030.

3  **III.    Carson City Sheriff Lacks The Capacity To Be Sued**

4          Defendants also contend that Carson City Sheriff is entitled to summary judgment on

5  all of Wampler's claims because it is not a proper party to this action as it lacks the capacity

6  to be sued.  A government entity's capacity to be sued in federal court is determined by state

7  law.  FED. R. CIV. P. 17(b); *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001).

8  Under Nevada law, "[i]n the absence of statutory authorization, a department of the municipal

9  government may not, in the departmental name, sue or be sued."  *Wayment v. Holmes*, 912

10  P.2d 816, 819 (Nev. 1996) (quoting 64 C.J.S. MUNICIPAL CORPORATIONS § 2195 (1950)).

11  Although NRS § 41.031(2) authorizes suit against "any political subdivision of the State," that

12  authorization does not extend to departments of a municipal governments, such as municipal

13  sheriff departments.  *See Scheinder v. Elko Cnty. Sheriff's Dep't*, 17 F.Supp.2d 1162, 1164-65

14  (D. Nev. 1998) ("A Nevada county falls within this definition, but not a sheriff's department.");

15  *Parish v. Nye Cnty. Sheriff's Office*, 2012 WL 13768, at *2 (D. Nev. 2012) (holding that

16  "because the Nye County Sheriff's Office and the Nye County Commissioners are mere

17  departments of Nye County, they lack the capacity to be sued"); *Wallace v. City of N. Las

18  Vegas*, 2011 WL 2971241, at *1 (D. Nev. 2011) (dismissing North Las Vegas Police

19  Department because no statutory authority allowed for it to be sued); *Orth v. Balaam*, 2011

20  WL 1561423, at *5 (D. Nev. 2011) (dismissing Washoe County Sheriff's Department because

21  "the court cannot allow the case to proceed against a named entity which lacks the capacity

22  to be sued under Nevada law"); *Cerros v. N. Las Vegas Police Dep't*, 2008 WL 608641, at *9

23  (D. Nev. 2008) (dismissing North Las Vegas Police Department as a party because it lacked

24  the capacity to be sued).  Because Carson City Sheriff is a department of a municipality, it

25  lacks the capacity to be sued in this action.  Carson City Sheriff must accordingly be dismissed

26  from this case.

27                                    **CONCLUSION**

28          For the foregoing reasons, IT IS ORDERED that the Court GRANTS Defendants'

12

motion for summary judgment (#12).

IT IS FURTHER ORDERED that the Court DENIES Wampler's motion for partial summary judgment (#18).

DATED: This  3rd day of August, 2012.

_____
United States District Judge